## ALFRED EDWARDS & CO. v. MINVIELLE.

When an endorser of a note pays it, without seasonable notice of the non-payment by the maker, he can not recover from a previous endorser, although he has lost no time in notifying such endorser.

APPEAL from the Fifth District Court of New Orleans, , J. T. A. Clarke & Bayne for plaintiffs. L. T. Casteru, for defendant and appellant.

SLIDELL, C. J. The evidence is defective in this respect, that it does not appear that *Corning & Co.* mailed the note and protest for *Duncan, Sherman & Co.* in time for the mail of the day succeeding the day of protest. Moreover, although the notices for the various endorsers enclosed by the notary under cover to *Duncan, Sherman & Co.* were seasonably mailed, yet it does not appear on what day *Duncan, Sherman & Co.* received them. It may be, for aught that appears to the contrary, that *Duncan, Sherman & Co.* received those notices before they received the note and protest sent them by *Corning & Co.* If so, they should on the next day after the receipt of notice have notified plaintiffs. In this uncertainty as to dates, we are unable to say that *Edwards & Co.* were seasonably notified and that their notice to the defendant was seasonable, and therefore we think

EDWARDS & Co.
   *v.*
MINVIELLE.

the judgment should be reversed. If *Edwards & Co.* paid without seasonable notice, they cannot resort to the defendant, although they themselves lost no time in notifying the defendants.

OGDEN, J., and CAMPBELL, J., concurring.

Judgment reversed and judgment for defendant, plaintiff to pay costs in both Courts.

VOORHIES, J. The defendant is sued as endorser on a promissory note made to his order at New York, and payable at the Bank of Louisiana, New Orleans. The only defence urged by him, is want of notice or diligence.

It appears that the note was duly protested at maturity, on the 14th of February, 1852. In his certificate, the notary declares, "that the parties to the note, whereof a true copy is above written, have been duly notified of the protest thereof, by letter to them by me written and addressed, dated on the day of said protest and served on them respectively in the following manner, viz : To *Joseph Halz*, drawer ; *F. F. Minvielle*, endorser ; *Alfred Edwards & Co.*, endorsers ; *Wm. E. Whitney & Co.*, endorsers ; *Duncan, Sherman & Co.*, endorsers ; which notices were placed under cover of one package, addressed to *Messrs. Duncan, Sherman & Co.*, at New York, N. Y., and deposited this day in the Post Office of this city."

It does not appear that this package, which contained *the only notices given by the notary*, ever reached its destination, except by inference. In his testimony, *M. C. Randall*, the note clerk of *J. Corning & Co.* says : "When a note is protested one day it is handed to us the next day by the notary, and is then immediately forwarded by us to the party. In this case the note was handed to us the next day after protest by the notary, and forwarded by us to the party the same day ; the note was sent to us by *Duncan, Sherman & Co.* from New York for collection. As note clerk, I put the notes and letters into the Post Office, which are sent out by *J. Corning & Co.* We sent this *note* and *protest* enclosed in a letter to *Messrs. Duncan, Sherman & Co.*, at New York on the day it was returned to *Corning & Co.* protested." Thus it appears that the note and protest alone were sent. The next connecting link of evidence which we have, is the deposition of *Lewis*, cashier of *Duncan, Sherman & Co.*, bankers in New York ; he says : "I do know the note enquired of—it was enclosed to us in a letter from *J. Corning & Co.* in New Orleans, our correspondents, together with protest, and expenses charged to us, and that said note and protest were sent to the store of plaintiffs on the same day of its receipt by us, and a check was immediately given by them to us on their presentation, which covered amount of note and expenses. The only steps we took to notify *Alfred Edwards & Co.* were those designated therein of sending the note and protest as we received it. I have no recollection at this time of the original notice of protest." He adds : · "I have stated all I know : that on the day we received notice of protest and note, we forwarded it to our immediate·endorsers, *A. Edwards & Co.* The mails are sometimes so irregular we receive notice from our correspondent sooner than from a notary, &c." This is certainly irreconcileable with the former part of his deposition, unless it be inferred that the notice of protest alluded to by him was one of the notices forwarded by the notary to *Duncan, Sherman & Co.*, and this would seem to be the most natural inference, particularly if the matter be considered with reference to the depositions of *Atwater*, the plaintiff's Clerk. In his first deposition taken on the 6th May, 1852, *Atwater* says : "I received from the Post Office on the 27th

of February, 1852, a letter addressed to plaintiffs, containing the notice of the protest, and another notice addressed to *F. F. Minvielle*, (which was enclosed in the first protest,) as endorser of the note. Mr. *Amory Edwards* in my sight folded up in a letter a notice of non-payment of the note enquired of. I copied the letter myself in which the notice was enclosed. The letter in which the notice was mailed was addressed to *Thomas Allen Clarke, Esq.*, counsellor at law. This notice was a copy of the notice here produced and marked A, to which I now affix my name." The notice referred to is one of the notices signed by the notary, and dated on the day of the protest. In this deposition, no allusion whatever is made to the presentment of the note and protest and the payment thereof by the plaintiffs. But in his other deposition, taken on the 18th of December, 1852, he says: "I saw the note after its protest in the hands of Mr. *Amory Edwards*, one of the plaintiffs upon the same day that it was received from *Duncan, Sherman & Co.* On that same day we enclosed a notice of protest to the defendant under cover to *Thomas Allen Clarke, Esq.*, in New Orleans. I saw Mr. *Amory Edwards* enclose the protest and note in the said cover, and I myself took it to the Post Office and mailed it in time for the first Southern mail of that day, after business hours commenced. I am positive it was the note of *Joseph Halz* endorsed by the defendant. The letter to *Clarke* directed him to serve the notice upon defendant, as agent for plaintiffs; that was the substance of the direction." He adds: "Notices of protest were received from New Orleans, but whether through the Post Office or from *Duncan, Sherman & Co.*, I am unable to swear. The reception of the note and its dishonor of protest from *Duncan, Sherman & Co.* were considered by our firm as a notice to plaintiffs, as endorsers, of its dishonor. Acting upon that notice the plaintiffs sent to notify the defendant through Mr. *Clarke*, &c." This is palpably inconsistent with his former deposition. It is obvious that the notice sent to the defendant, through Mr. *Clarke*, must have been one of the notices forwarded by the notary to *Duncan, Sherman & Co.*; indeed no others were forwarded. At what date *Duncan, Sherman & Co.* received them or communicated them to the plaintiffs is not shown. It is evident, however, that it must have been previous to the date of the presentment of the note and protest; but how long we are unable to discover from the evidence. We do not think the plaintiffs, under this state of facts, have brought themselves within the rule of the commercial law to entitle them to recover. 1 Ann. 369.

It is, therefore, ordered and decreed that the judgment of the District Court be reversed and that the plaintiffs pay the costs in both Courts.